UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION (BOSTON)

| | | |
|---|---|---|
| BRIAN CHAVEZ, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **C.A. NO.: 1:12-10251** |
| | ) | |
| SPECIAL OFFICER ZACHOWSKI | ) | |
| and LONGWOOD SECURITY | ) | |
| SERVICES, INC. | ) | |
| Defendants | ) | |

## TRIAL BRIEF OF DEFENDANTS, CHARLES ZUKOWSKI AND LONGWOOD SECURITY SERVICES, INC.

### A. Motions In Limine

We intend to brief our position in response to the plaintiff's three motions in limine as follows:

I.   Opposition to Plaintiff's Motion in Limine #1: Excluding the Defendants' Proposed Exhibits

It is the position of the Defendants that the plaintiff's allegations that he was assaulted, battered and subjected to a racial slur are fabricated. Discovery has revealed that the plaintiff has a long and documented history of disdain for police officers. The Defendants pursuant to FRE 404(3)(b)(motive as exception to FRE 404 regarding inadmissibility of character evidence), 607(impeachment), 608(evidence of character) and 609(impeachment by conviction) intend to introduce the plaintiff's prior and subsequent bad acts to show that he was motivated to fabricate these allegations due to his disdain of police officers.

Notably, within the Plaintiff's Initial Disclosures are medical records that reveal in 2005 the plaintiff accused a Boston Police Officer of "roughing him up" and knocking him off a dirt bike. After the 2005 incident involving a Boston Police Officer, the plaintiff sought treatment due to the anxiety and anger he allegedly experienced from the same medical providers he received "treatment" from after the November 24, 2008 incident. Notably, the plaintiff told his treating physicians on several occasions in 2005 and 2006 that he has "increasing anger towards police officers" and that it "makes him angry to see police officers labeled as heroes."

Additionally, the November 24, 2008 incident which is the subject of the Plaintiff's Complaint refers to an incident involving the Plaintiff's use of his "father's" vehicle. Both prior and subsequent to November 24, 2008, CMJ Management, the management company for the HarborPoint, disclosed a number of incidents where the plaintiff was confrontational with other Longwood Security Officers and a CMJ staff regarding parking on the premises. These incidents reveal that the Plaintiff not only

continually disregarded the parking regulations at HarborPoint before and after the incident, but also acted in a belligerent manner consistent with his conduct on November 24, 2008.

The Plaintiff has a long history of arrests for drug offenses. Presently, the Plaintiff is awaiting trial on felony drug distribution charges and firearm offenses in Suffolk County. Just a week after his deposition in this matter, the plaintiff was arrested on September 7, 2012 with several individually wrapped bags of marijuana and loaded handgun underneath the diver's seat of the same car involved in the November 24, 2008 incident. A subsequent search of the plaintiff's apartment at HarborPoint, the incident locus, caused the ATF to remove several firearms and ammunition from the plaintiff's apartment that he shares with his mother. The fact of this incident is impeachment evidence and is relevant to the plaintiff's claims that the November 24, 2008 incident affected his academic performance (he was dismissed from UMASS-Boston as a result of the September 2012 arrest). The evidence also tends to show that any anxiety the plaintiff claims is connected to the November 24, 2008 incident is actually caused by his fear of being apprehended by police while engaging in drug-related activity. Notably, the plaintiff's prior medical records show that the plaintiff on a number of occasions in 2005 and 2006 discussed the stress and anxiety he experienced due to upcoming court matters regarding his drug offenses with his treating physicians.

Finally, the Defendants have obtained subsequent police reports where the plaintiff has acted in the same belligerent manner towards police officers as described in Officer Zukowski's November 24, 2008 incident report. The Plaintiff has admitted in his answers to interrogatories that he called Officer Zukowski a "dickhead" on more than one occasion prior to his arrest. Similarly, on December 30, 2010, during a motor vehicle stop and drug investigation, the plaintiff acted belligerently towards officers and called another Longwood Security Officer a "dickhead." Such conduct contradicts the plaintiff's claims that he experiences anxiety and is fearful of police officers as a result of the November 24, 2008 incident and shows that the plaintiff has an ongoing pattern of being disrespectful to police officers.

Pursuant to Federal Rules of Evidence 404(3)(b)(motive as exception to FRE 404 regarding inadmissibility of character evidence), 607(impeachment), 608(evidence of character) and 609(impeachment by conviction), the plaintiff's prior and subsequent acts should be admitted to not only permit the fact-finder to weigh the plaintiff's credibility, but also to show that he was motivated to fabricate these allegations as he is pre-disposed to disliking police officers. The plaintiff has only recently disclosed to the defendants that he will not be introducing any medical records regarding the alleged treatment he received after the November 24, 2008 incident, which is contradictory to the plaintiff's pleadings and discovery conducted in this matter. This is clearly a tactic that can only be considered as a ploy by the plaintiff to shield his prior history of disdain of police officers from the fact-finder. The medical records of the plaintiff's showing the plaintiff's "anger" towards police officers are plainly relevant to showing that the plaintiff has a motive beyond financial recovery for making these allegations.

Finally, the admission of character evidence to both show motive and to impeach the Plaintiff is appropriate under these circumstances. The Plaintiff does not have any claims pending against him. The restrictions of admitting character evidence are for the purpose of protecting the accused. Here, the Plaintiff faces no claims against him, and therefore it is appropriate to allow the fact-finder to know that the plaintiff has made similar accusations against police officers in the past, has a history of

being belligerent towards officers, has sought medical treatment because of his disdain for police officers, and has continued after the November 24, 2008 incident to engage police in confrontations, such as, the November 24, 2008 incident.

II.     Opposition to Plaintiff's Motion in Limine #2:   Exclude Matthew Schumman from the Courtroom

No objection, however, Chester Veloz and Margarita Chavez should also be excluded.

III.    Opposition to Plaintiff's Motion in Limine #3:   Exclude References to Defendant Zukowski, Matthew Schumman or John Connolly as Experts and from Giving Expert Opinion

No objection.

## Defendants' Motions in Limine

The Defendants reserve the right to assert additional motions in limine prior to trial.   The Defendants hereby submit the following motions in limine for the Court's consideration.

II.     24 Hour Notice of Witnesses to Be Called by Plaintiff

Defendant's will file a Motion in Limine requesting that the Plaintiff provide the Defendant's 24 hours of notice of the witnesses they will be calling in their case-in-chief.

IV.     Motion to Read Transcripts of Margarita Chavez and Chester Veloz at Trial

At this time, the Defendants have served trial subpoenas on Margarita Chavez and Chester Veloz who were deposed by the Defendants in this matter.   It is the understanding of counsel that Ms. Chavez and Mr. Veloz will both be available to testify at trial.   Should Ms. Chavez and Mr. Veloz appear for trial, there will be no need to read from their deposition transcripts.   However, in the event Ms. Chavez and Mr. Veloz do not appear for trial, the Defendants request that they be able to read certain portions of Ms. Chavez's and Mr. Veloz's testimony at trial.

### B. Neutral Statement to Be Read to The Jury

The plaintiff claims that he was assaulted, battered and subjected to a racial slur by the Defendant Charles Zukowski on November 24, 2008 during his arrest for Disorderly Conduct.   The Defendants assert that the plaintiff was lawfully arrested for Disorderly Conduct.   The Defendants deny all of the plaintiff's allegations that he was assaulted, battered and subjected to a racial slur.   Further, the Defendants deny the plaintiff's claims that he was subject to a malicious prosecution and/or that the Defendants abused process as the plaintiff was released after the incident and given the benefit of appearing at a clerk magistrate's hearing to challenge the issuance of a complaint.

### C. Proposed Voir Dire

1) Have you, or any of your immediate family members, ever felt they were being discriminated against because of their sex, race, ethinic origin, religion or sexual orientation? If yes, please tell us about the situation.
2) Have you, or any of your immediate family members ever filed, or thought about filing, a discrimination charge or lawsuit. If yes, please tell us about the situation.
3) Do you know anybody who has experienced any type of discrimination? If yes, please tell us about the situation.
4) Have you, or any of your immediate family members, ever been wrongfully accused of a crime by law enforcement.
5) Have you, or any of your immediate family members, ever filed, or thought of filing a complaint against a police officer because of his conduct? If yes, please tell us about the situation.
6) Is there any reason that you would give more credibility to the testimony of a civilian witness as opposed to a police officer because of their employment as a police officer? If yes, please tell us why.
7) Have you, or someone in your immediate family, ever suffered from anxiety or depression as a result of a traumatic event? If yes, please tell us about the situation.
8) Have you ever been arrested.
9) Have you ever been charged with a crime?

### D. Jury Instructions

The Defendants reserve the right to supplement their jury instructions depending on the evidence, issues and disputes that may arise at trial. The Defendants propose the following jury instructions:

### INSTRUCTIONS FOR CLAIM OF ASSAULT

The plaintiff claims that the defendant assaulted him, and that he suffered harm or injury from the assault for which he seeks to recover compensatory damages in this case. Let me now explain the civil tort of assault, and then explain what the plaintiff must prove in order to recover damages.

An assault may be committed in either of two ways. It is either an attempted battery or an immediately threatened battery.[1] A battery is a harmful or an unpermitted touching of another person. So an assault can be either an attempt to use some degree of physical force on another person—for example, by throwing a punch at someone—or it can be a demonstration of an apparent intent to use immediate force on another person—for example, by coming at someone with fists flying.[2] The plaintiff may prevail on the assault claim if he proves either form of assault.

In order to establish the first form of assault—an attempted battery—the plaintiff must prove by a preponderance of the evidence that the defendant intended to commit a battery—that is, a harmful or an unpermitted touching—upon the plaintiff, took some overt step toward accomplishing that intent, and came reasonably close to doing so.[3]

In order to prove the second form of assault—an imminently threatened battery—the plaintiff must prove by a preponderance of the evidence that the defendant intended to put the plaintiff in apprehension of an imminent battery, and engaged in some conduct toward the plaintiff which the plaintiff reasonably perceived as imminently threatening a battery.

Thus, in order to prevail on the assault claim the plaintiff must prove the following by a preponderance of the evidence:

- First, that the defendant engaged in an overt act constituting an attempted battery or an immediately threatened battery;

- second, that the defendant intentionally committed this overt act, as opposed to having done so negligently or accidentally;

- third, that as result of the defendant's actions, the plaintiff apprehended immediate physical contact; and

- fourth, the defendant's assault was a cause of the plaintiff's injury or harm.

Let me elaborate further on each of these elements.

The first element the plaintiff must prove by a preponderance of the evidence is that the defendant engaged in an overt act.[4] The overt act need not be substantial, but mere words are not enough to constitute the requisite act.[5] However, words can affect a generally inoffensive overt act, such that together the words and act equate to an assault.[6]

The second element the plaintiff must prove by a preponderance of the evidence is that the defendant engaged in the overt act intentionally.[7] Intent means a person's objective or purpose. The intent that is required for an assault is either the intent to cause harmful or offensive contact with the plaintiff, or to make the plaintiff apprehensive of immediate physical contact. The plaintiff does not have to prove that the defendant intended any particular harm or injury which might have resulted from the assault.[8]

The third element the plaintiff must prove by a preponderance of the evidence is that the defendant's overt act resulted in the plaintiff apprehending immediate physical contact.[9] Apprehension in this context means that the plaintiff perceived or comprehended approaching contact (i.e., a battery) by the defendant.[10] The plaintiff's apprehension must be reasonable.[11] In other words, the plaintiff must persuade you that a reasonable person would become apprehensive in the face of the defendant's threatening conduct. Apprehension is not necessarily synonymous with fear—a courageous person who does not fear the defendant may still be apprehensive.[12] The plaintiff must be aware of the defendant's conduct to be apprehensive. Thus, if a person is asleep and learns of the defendant's threatening conduct after he awakens, then an assault in the form of an immediately threatened battery has not occurred.[13]

The fourth element the plaintiff must prove by a preponderance of the evidence is that the defendant caused the plaintiff to sustain injury or harm. The defendant's conduct was the factual cause of the

plaintiff's injury or loss if the loss would not have occurred absent the defendant's assault. In other words, if the harm would have occurred anyway, the defendant is not liable.

If the plaintiff has proved the elements of assault, he is entitled to nominal damages even without proof of actual damages.[14]

[1] *Conley v. Romeri*, 60 Mass. App. Ct. 799, 805 n.6 (2004); Restatement (Second) of Torts § 21 (1965).

[2] *Cook v. WHDH-TV, Inc.*, 1999 WL 1327222, at *6 (Mass. Super. Ct. 1999).

[3] This form of assault still requires that the defendant's act caused apprehension of an immediate contact, whether harmful or merely offensive. *See* Restatement (Second) of Torts § 21, cmt. c (1965).

[4] *Dahms v. Cognex Corp.*, 2000 WL 33170952, at *5 (Mass. Super. Ct. 2000).

[5] *Laghetto v. Takacs*, 1994 WL 879841, at *2 (Mass. Super. Ct. 1994). *Laghetto v. Takacs*, 1994 WL 879841, at *2 (Mass. Super. Ct. 1994).

[6] *Ross v. Michael*, 246 Mass. 126, 130 (1923) (noting that defendant's gesture accompanied by words expressing immediate intention and present ability to do bodily harm to plaintiff was assault).

[7] *Schenker v. Binns*, 18 Mass. App. Ct. 404, 406 (1984) (discussing assault and noting that it is intentional tort).

[8] *Cf. Le Saint v. Weston*, 301 Mass. 136, 138 (1938) (explaining that intent in this context does not require actual intent to injure or harm plaintiff, but merely intent to engage in act itself).

[9] Restatement (Second) of Torts § 21 (1965).

[10] *Black's Law Dictionary* 97 (7th ed. 1999).

[11] *Tort Law* (37 *Massachusetts Practice Series*) § 2.2 (3d ed. 2010).

[12] Note that although dicta in recent case law pertaining to criminal assault seems to lead to the inference that civil assault requires that the plaintiff actually be in *fear* to satisfy the apprehension element of civil assault, this inference is not warranted. *Compare Ginsberg v. Blacker*, 67 Mass. App. Ct. 139, 144 n.7 (2006) ("The distinction between civil and criminal assault is that in the latter case the Commonwealth need not prove that the victim was actually in fear or apprehension of harm."), *with* Restatement (Second) of Torts § 24, cmt. b (1965) (discussing distinction between apprehension and fright, specifically noting that "[t]he apprehension which is sufficient to make the actor liable may have no relation to fear"); *see also Commonwealth v. Slaney*, 345 Mass. 135, 139 (1962) (specifically explaining that "neither fear, nor terror nor apprehension of harm is an essential ingredient of the . . . crime of assault," but not standing for proposition that fear is a necessary element of civil assault).

[13] *Tort Law* (37 *Massachusetts Practice Series*) § 2.2 (3d ed. 2010).

[14] *Tort Law* (37 *Massachusetts Practice Series*) § 2.3 (3d ed. 2010); *see Conklin v. Consolidated Ry. Co.*, 196 Mass. 302, 307 (1907) (it "was competent to prove the professional standing and reputation of the plaintiff and the nature and extent of his practice before and after the injury, upon the question of damages").

## INSTRUCTIONS FOR CLAIM OF BATTERY

Battery is the intentional and unjustified use of force against another person, however slight. In order for the plaintiff to recover damages from the defendant for the battery allegation, he must establish by a preponderance of the evidence the following elements:

- First, the defendant used force against the plaintiff;

- second, the defendant intentionally used this force against the plaintiff, as opposed to having done so negligently or accidentally;

- third, the force the defendant used against the plaintiff was without justification or excuse; and

- fourth, the defendant's battery was a cause of the plaintiff's [injury/harm].

The first element the plaintiff must prove by a preponderance of the evidence is that the defendant used force against the plaintiff.[1] Any degree of force satisfies this element—the force used may be slight.[2] The force used must be harmful or offensive. A bodily contact is "offensive" if it offends a reasonable sense of personal dignity.[3] Examples of battery are pushing, striking, slapping, punching, or even the touching of another individual, as long as the touching is intentional and not consented to. Touching of the plaintiff's clothing or an object in the hands of the plaintiff may constitute a battery because the object is an extension of the plaintiff's body.[4]

The second element the plaintiff must prove by a preponderance of the evidence is that the defendant intended to use force against the plaintiff.[5] Intent means a person's objective or purpose. It is the defendant's conduct that must be intended, not the result. Thus, it is not necessary for the plaintiff to prove that the defendant intended the specific harm which the plaintiff endured, but only that the defendant intended the conduct itself.[6]

The third element the plaintiff must prove by a preponderance of the evidence is that the force used against the plaintiff was unjustified.[7] Not every contact with another person results in battery.[8] For instance, contact which is consented to is not a battery.[9] In some cases, a person may use force against another in lawful self defense or defense of another.[10]

The fourth element the plaintiff must prove by a preponderance of the evidence is that the defendant caused the plaintiff to sustain [injury/harm]. The defendant's conduct was the factual cause of the plaintiff's injury or loss if the loss would not have occurred absent the defendant's battery. In other words, if the harm would have occurred anyway, the defendant is not liable.[11]

If you determine that the defendant committed a battery against the plaintiff, then you must determine the plaintiff's damages. The plaintiff is entitled to recover for physical injury and suffering, expenses, and loss of earning capacity.[12] The plaintiff is also entitled to recover for humiliation, indignity, and injury to [his/her] feelings as long as the plaintiff established that these injuries were a result of the assault and/or battery.[13]

[1] *Le Saint v. Weston*, 301 Mass. 136, 138 (1938).

[2] *See Commonwealth v. Boyd*, 73 Mass. App. Ct. 190, 194 (2008) (discussing elements of battery and noting that conduct ranging from harmful to offensive may satisfy force element). Note that the elements of assault and battery are substantially similar on both the civil and criminal side of the Massachusetts court system. *Cf. Glover v. Callahan*, 299 Mass. 55, 56 (1937); *see Prima Facie Case* (17A *Massachusetts Practice Series*) § 38.1 (5th ed. 2010).

[3] Restatement (Second) of Torts § 19 (1965).

[4] Restatement (Second) of Torts § 18, cmt. c (1965).

[5] *See Pasquale v. Chandler*, 350 Mass. 450, 459 (1966) (defendant-physician did not intend to leave eight-inch clamp in abdominal cavity of plaintiff-patient, thus battery did not result).

[6] *E.g., Waters v. Blackshear*, 412 Mass. 589, 591 (1992) (even though defendant may not have intended to cause burn injuries to plaintiff, or may not have even understood potential seriousness of his conduct, intentional placing of firecracker in plaintiff's shoe and intentional lighting of firecracker satisfies requisite intent for battery).

[7] *Commonwealth v. Mosby*, 30 Mass. App. Ct. 181, 184 (1991).

[8] *E.g., Powers v. Sturtevant*, 199 Mass. 265, 266 (1908) (defendant police officer had right to arrest plaintiff and to use force as was reasonably necessary to overcome any resistance that plaintiff offered).

[9] *See Thibault v. Lalumiere*, 318 Mass. 72, 74 (1945) (explaining that "if the plaintiff knowingly consented to and participated in . . . manifestations of apparent affection by the defendant, her consent would bar her from complaining that conduct of this character constituted a wrong to her"), *disapproved of on other grounds*, *De Cicco v. Barker*, 339 Mass. 457 (1959).

[10] For defenses to intentional torts, see *Tort Law* (37 *Massachusetts Practice Series*) ch. 10 (3d ed. 2010).

[11] For situations in which "but for" causation may not be appropriate, see more detailed causation model charges in Chapter 2, Personal Injury, § 2.1.8.

[12] *Conklin v. Consolidated Ry. Co.*, 196 Mass. 302, 307 (1907) (it "was competent to prove the professional standing and reputation of the plaintiff and the nature and extent of his practice before and after the injury, upon the question of damages").

[13] *Burns v. Jones*, 211 Mass. 475, 476 (1912).


## INSTRUCTIONS FOR MALICIOUS PROSECUTION

### Malicious Prosecution Elements

In this case the plaintiff claims that the defendants maliciously instituted a prior legal proceeding against him and that he suffered harm as a result. In order to recover, the plaintiff must prove the following four elements by a fair preponderance of the credible evidence:

1.   that the defendant instituted a prior criminal or civil proceeding against the plaintiff;

2.   that the institution of the prior proceeding was done without probable cause;

3.   that the institution of the prior proceeding was done with an improper purpose; and

4.   that the prior proceeding terminated in favor of the plaintiff.[1]

If the plaintiff has proved each of these four elements by a preponderance of the evidence, your verdict shall be for the plaintiff, and you shall go on to determine the amount of money damages to be awarded the plaintiff. If the plaintiff has failed to prove any one of the elements, your verdict shall be for the defendant.

---

[1] *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 197 (2010); *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 107–11 (2006); *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 260–61 (1961).

## Lack of Probable Cause—Criminal

The second element the plaintiff must prove is that the defendant instituted the prior proceeding without probable cause. "Probable cause" is such a state of facts in the mind of one instituting criminal proceedings as would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person charged is guilty. It is the person's honest and reasonable belief, not the actual state of things, that governs.[1]

Probable cause requires not only a subjective belief that another has committed a crime, but also objective facts that provide reasonable support for that belief.[2] The standard in a malicious prosecution action for determining whether a person has probable cause to complain is objective in the sense that if the facts known by that person would have justified a reasonable person in thinking that the crime had been committed, then the complaint is warranted.[3]

The defendant's "belief" in the plaintiff's guilt, which is a necessary part of "probable cause," does not mean that the defendant was certain of the plaintiff's guilt. In determining whether a defendant's belief that the plaintiff in a malicious prosecution action committed a crime was reasonable in an objective sense, examination should be made of information known to the defendant at the time that he instituted the complaint. Included in such inquiry is the question of whether it was reasonable for the defendant to have relied upon that information, given its quality, quantity, and the availability of additional information.[4]

The defendant's conduct must be judged by his honest and reasonable belief at the time he instituted the complaint, rather than by what may turn out later to have been the actual state of things.[5]

---

[1] *Seelig v. Harvard Co-op Soc'y*, 355 Mass. 532, 541–42 (1969); *Muniz v. Mehlman*, 327 Mass. 353, 359 (1951); *Bednarz v. Bednarz*, 27 Mass. App. Ct. 668, 672 (1989).

[2] *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 19 (1982).

[3] *Carroll v. Gillespie*, 14 Mass. App. Ct. at 21 (citing Restatement (Second) of Torts § 66, cmt. j (1977)); *O'Connell v. Bank of Boston*, 37 Mass. App. Ct. 416, 420 (1994).

[4] *Carroll v. Gillespie*, 14 Mass. App. Ct. at 19–20.

[5] *Muniz v. Mehlman*, 327 Mass. at 359.

**Improper Purpose**

The third element the plaintiff must prove is that the defendant was motivated by an improper purpose in instituting the prior proceeding against him.[1] An improper motive includes "one of vexation, harassment, annoyance, or attempting to achieve an unlawful end or a lawful end through an unlawful means."[2] The following are examples of improper purpose:

- the person who initiates the proceeding is aware that his or her claim is without merit;

- the person who initiates the proceeding knows that it is based on false or perjured testimony;

- the person who initiates the proceeding does so primarily because of hostility or ill will;

- the person who initiates the proceeding does so with the intent to harass another, even if the harassment itself was not motivated by ill will;

- the person who initiates the proceeding does so with the intent to injure another;

- the person who initiates the proceeding does so for the purpose of forcing a settlement that is unrelated to the merits of the claim;

- a defendant initiates a counterclaim for the sole purpose of delaying expeditious treatment of the initial cause of action.[3]

This list is illustrative, not inclusive. An improper purpose exists any time a person institutes proceedings with a primary purpose other than adjudicating the claim on which the proceeding is based.[4]

[1] *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 109–10 (2006).

[2] *Beecy v. Pucciarelli*, 387 Mass. 589, 595 n.9 (1982).

[3] Restatement (Second) of Torts § 676, cmt. c (1977).

[4] *Chervin v. Travelers Ins. Co.*, 448 Mass. at 107–08 (citing Restatement (Second) of Torts § 676 (1977)).

**Proceedings Terminated in Favor of Plaintiff**

The fourth element the plaintiff must prove is that the prior proceeding was terminated in his favor. An acquittal on the charges against him (or, if in a civil action, a jury verdict in plaintiff's favor) constitutes termination in the plaintiff's favor.[1] A civil action is deemed to be terminated in the plaintiff's favor if the defendant voluntarily dismissed the complaint or otherwise fails to prosecute the case.[2]

[1] *Pilos v. First Nat'l Stores, Inc.*, 319 Mass. 475, 477–78 (1946).

[2] *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 110 (2006).

## Damages for Malicious Prosecution

If the plaintiff has proved the four elements as explained earlier by a fair preponderance of the credible evidence, then you must go on and determine the amount of money damages to be awarded to the plaintiff.

In a case where there has been a malicious prosecution, the law provides that the plaintiff may recover all damages that are the direct result of the malicious prosecution. Thus, the plaintiff is entitled to recover for his actual costs incurred, including counsel fees, in defending the previous action.[1] In addition, the plaintiff may recover compensatory damages for his loss of earnings, harm to his reputation, and for the emotional distress suffered as a result of the malicious prosecution.[2]

[1] *Wheeler v. Hanson*, 161 Mass. 370, 376 (1894).

[2] *Rich v. Rogers*, 250 Mass. 587, 589 (1925). *See* Restatement (Second) of Torts §§ 670, 671.

## INSTRUCTIONS ABUSE OF PROCESS

## Abuse of Process Elements

This is an action for abuse of process. To recover, the plaintiff must prove to you by a preponderance of the evidence that the defendant:

1.  used legal process;

2.  for an ulterior or illegitimate purpose; and,

3.  resulting in damage to the plaintiff.[1]

[1] Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011); Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010); Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 775–76 (1986); Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387 (1975); American Mgmt. Servs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64 (D. Mass. 1996); Milford Power Ltd. P'ship By Milford Power Assocs., Inc. v. New England Power Co., 918 F. Supp. 471 (D. Mass. 1996); General Elec. Co. v. Lyon, 894 F. Supp. 544 (D. Mass. 1995); see also Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492, 504 (1997); Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 407 (2002); Ladd v. Polidoro, 424 Mass. 196, 198–99 (1997); North Shore Pharmacy Servs., Inc. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 130 (D. Mass. 2007); Davidson v. Cao, 211 F. Supp. 2d 264, 287 (D. Mass. 2002); Hartford v. Hartford, 60 Mass. App. Ct. 446, 454 (2004).

**Ulterior Purpose**

The plaintiff must show that the process was used to accomplish some ulterior purpose for which the process was not designed or intended, or that was not a legitimate purpose for the particular process employed.[1]

If the stated objective of the process was the actual objective, then there is no abuse of process.[2]

It is not enough for the plaintiff to show that the defendant used the process to vex, annoy, or harass the plaintiff. Such a motive does not alone suffice to show ulterior purpose. Rather, the ulterior purpose must be to gain some collateral advantage.[3] Abuse of process is a form of coercion to obtain a collateral advantage not properly involved in the proceeding itself, such as the surrender of property or the payment of money.[4]

[1] *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713 (2011); *Ladd v. Polidoro*, 424 Mass. 196, 198 (1997); *FDIC v. Greenberg*, 851 F. Supp. 15 (D. Mass. 1994); *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 775 (1986); *Beecy v. Pucciarelli*, 387 Mass. 589 (1982); *Quaranto v. Silverman*, 345 Mass. 423 (1963); *Altenhaus v. Louison*, 342 Mass. 773 (1961); *Elliott v. Warwick Stores, Inc.*, 329 Mass. 406 (1952); *Noyes v. Shanahan*, 325 Mass. 601 (1950); *Gabriel v. Borowy*, 324 Mass. 231 (1949); *Carroll v. Gillespie*, 14 Mass. App. Ct. 12 (1982).

[2] *Jones v. Brockton Pub. Mkts., Inc.*, 369 Mass. 387, 391 (1975); *Silvia v. Building Inspector of W. Bridgewater*, 35 Mass. App. Ct. 451, 454–55 (1993).

[3] *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 713–14 (2011).

[4] *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 406 (2000).

**Process**

"Process" refers to papers issued by a court to bring a party or property within the jurisdiction of the court.[1]

[1] Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 390 (1975); Silvia v. Building Inspector of W. Bridgewater, 35 Mass. App. Ct. 451 (1993); Ferraro v. First Safety Fund Nat'l Bank, 11 Mass. App. Ct. 928 (1981) (rescript); Chemawa Country Golf, Inc. v. Wnuk, 9 Mass. App. Ct. 506 (1980).

**Damages for Abuse of Process**

The plaintiff must show that damage occurred as the natural and probable consequence of the process initiated by the defendant. If there were no damages, then the plaintiff does not have a claim, even if the process was for an ulterior motive.[1]

[1] *Ledgehill Homes, Inc. v. Chaitman*, 348 Mass. 777 (1964); *Quaranto v. Silverman*, 345 Mass. 423, 427 (1963); *Swartz v. Brockton Sav. Bank*, 318 Mass. 66, 69 (1945); *Madan v. Royal Indem. Co.*, 26 Mass. App. Ct. 756, 764 (1989).

## INSTRUCTIONS ON FALSE IMPRISONMENT

### False Imprisonment—Elements

The plaintiff has brought a claim alleging that the defendant is liable for false imprisonment. To prove false imprisonment, the plaintiff must prove the following elements by a fair preponderance of the evidence:

1. that the defendant unlawfully confined the plaintiff, directly or indirectly;

2. that the defendant intentionally confined the plaintiff; and

3. that the plaintiff was either conscious of the confinement or harmed by the confinement.[1]

> Practice Note
> False imprisonment is an intentional tort and cannot be based upon mere negligence by the defendant.

[1] Restatement (Second) Torts § 35, False Imprisonment. *See Noel v. Town of Plymouth*, 895 F. Supp. at 354 ("The tort of false imprisonment consists in the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement") (citing *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989); *see also Wax v. McGrath*, 255 Mass. 340, 342 (1926)).

### Defense—Justified Confinement

Confinement that is justified is not false imprisonment. The defendant has the burden of proving that the confinement was justified.[1]

An arrest based upon probable cause (reasonable grounds) provides justification for confinement.[2]

[1] *Wax v. McGrath*, 255 Mass. 340, 342 (1926).

[2] *Sietins v. Joseph*, 238 F. Supp. 2d 366, 381 (D. Mass. 2003) (citing *Rose v. Town of Concord*, 971 F. Supp. 47, 51 (D. Mass. 1997)); *see Wax v. McGrath*, 255 Mass. at 343 ("Probable cause is a reasonable ground of suspicion of guilt . . . by circumstances sufficiently strong in themselves to warrant a cautious and prudent man in entertaining an honest belief that a party is guilty.").

### Damages for False Imprisonment

In an action for false imprisonment, the defendant is liable for the damages that are the direct result of his wrongful conduct. Such damages include the value of time spent in confinement.[1]

Such damages also include bodily suffering, if any, and injuries to the plaintiff's feelings occasioned by the wrongful act.[2] The plaintiff may recover for his emotional distress, if any, including shame, humiliation, and mental anguish.[3]

[1] *Bilodeau v. Maffei*, 309 Mass. 237, 238 (1941).

[2] *Tyler v. Pomeroy*, 90 Mass. (8 Allen) 480, 505 (1864).
[3] *Foley v. Polaroid Corp.*, 400 Mass. 82, 92–93 (1987); *see Limone v. United States*, 497 F. Supp. 2d 143 (D. Mass. 2007) (although claims for false arrest were barred, the overlapping claim for intentional infliction of emotional distress, as result of the false arrest, was heard by the court).

## INSTRUCTIONS FOR § 1983 CLAIMS

### Federal Civil Rights Actions

42 U.S.C. § 1983
This case involves a federal civil rights law, 42 U.S.C. § 1983, which provides a remedy for individuals who have been deprived of constitutional or statutory rights by a person or entity acting under color of state law.
This civil rights statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .[1]

[1] 42 U.S.C. § 1983. *See also Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Iacobucci v. Boulter*, 193 F.3d 14, 21 (1st Cir. 1999); *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999).

### Elements of the Cause of Action

In order to prevail on a Section 1983 claim, the plaintiff must prove by a preponderance of evidence each of the following elements:

1.   that the defendant was acting under color of law;

2.   that the defendant's conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and,[1]

3.   that the defendant's acts were the proximate cause of the plaintiff's injuries and resulting damages.

[1] Some circuits include a third element of proximate cause: (3) that the defendant's acts were the proximate cause of the plaintiff's injuries and resulting damages. *See* Fifth Circuit Pattern Instruction No. 10.1 (1995 ed.); *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir. 1982). The First Circuit, however, treats proximate cause as a subpart of the second element. *See Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989). *See also Parratt v. Taylor*, 451 U.S. 527, 535 (1987); *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir. 1994); *Martinez-Velez v. Simonet*, 919 F.2d 808, 810 (1st Cir. 1990).

## Color of State Law

The first element of the plaintiff's claim is that the defendant acted under color of state law. In this context, the term "state law" means any statute, ordinance, regulation, or custom. The word "state" means a state or any political subdivision, such as a county or city, and also means any agency of a state, county, or city. You may find that the defendant acted under color of law if you find that he was clothed with the authority of the state or exercised power possessed by virtue of law. Action under color of law includes the misuse of power possessed by virtue of state law and made possible only because the defendant was clothed with the authority of state law. Thus, even if you find that the defendant acted in violation of state law, you may find that [he/she] acted under color of state law.[1]

[1] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Monroe v. Pape*, 365 U.S. 167, 184 (1961); *United States v. Classic*, 313 U.S. 299, 326 (1941). *See also Zambrana-Marrero v. Suarez-Cruz*, 172 F.3d 122, 125–26 (1st Cir. 1999).

## Color of State Law—Massachusetts

The complaint alleges that the defendant was acting under color of law of the Commonwealth of Massachusetts when the plaintiff was deprived of his right to be free from excessive force. Accordingly, you must determine whether the defendant's acts were of such nature or were committed under such circumstances that the acts would not have occurred except for the fact that the defendant was clothed with the authority of the state. That is, you must determine whether the defendant was exercising his lawful power or was pretending to be lawfully exercising his official power while in reality abusing it.[1]

[1] *Paul v. Davis*, 424 U.S. 693, 717 (Brennan, J., dissenting); *Monroe v. Pape*, 365 U.S. 167, 172 (1961); *McIntyre v. U.S.*, 336 F. Supp. 2d 87, 119 (D. Mass. 2004).

## Deprivation of a Secured Right

The second element the plaintiff must prove is that he was deprived by the defendant of rights, privileges, or immunities secured and protected by the Constitution and laws of the United States. This element has two subparts, each of which must be proved by a preponderance of the evidence:

1.   you must determine whether there has been a deprivation of a federally protected right; and

2.   you must determine whether the defendant's conduct was causally connected to the deprivation.[1]

[1] *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989).

## Unlawful Arrest

The Fourth Amendment to the United States Constitution provides that no person may be arrested without due process of law. Due process of law in the context of an arrest means that the arrest must

be based upon probable cause. Probable cause exists if the facts and circumstances known to the defendant are sufficient to warrant a reasonable police officer in believing that the plaintiff has committed or is committing a crime.[1]

[1] *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir. 1994); *Lallemand v. Univ. of Rhode Island*, 9 F.3d 214, 215 (1st Cir. 1993). *See also Fletcher v. Town of Clinton*, 196 F.3d 41, 53 (1st Cir. 1999).

## Excessive Force

When placing the plaintiff under arrest, the defendant lawfully could use only that amount of force that a reasonable police officer would think necessary to bring the plaintiff into custody under the circumstances then confronting the defendant.[1]

Reasonable force must be judged from the perspective of a reasonable police officer on the scene, but this judgment is to be made objectively in light of facts and circumstances known to the defendant.[2]

In determining the reasonableness of the force used by the defendant, you may consider all the facts and circumstances known to the defendant, including the severity of the crime, whether the plaintiff posed an immediate threat to the safety of the defendant or others, and whether the plaintiff was actively resisting arrest or attempting to evade arrest by fleeing.[3]

You should keep in mind that not every push or shove rises to the level of a constitutional violation, and that police officers making arrests are often forced to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous, and rapidly changing circumstances.[4]

[1] *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Tatro v. Kervin*, 41 F.3d 9, 14 (1st Cir. 1994); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 (1st Cir. 1990). *See also Fletcher v. Town of Clinton*, 196 F.3d 41, 53 n.15 (1st Cir. 1999).

[2] *Graham v. Connor*, 490 U.S. 386 (1989); *Alexis v. McDonald's Rests. of Massachusetts, Inc.*, 67 F.3d 341, 352 (1st Cir. 1995); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 (1st Cir. 1990).

[3] *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Alexis v. McDonald's Rests. of Massachusetts, Inc.*, 67 F.3d 341, 352 (1st Cir. 1995); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 303, 205 (1st Cir. 1990).

[4] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Alexis v. McDonald's Rests. of Massachusetts, Inc.*, 67 F.3d 341, 352 (1st Cir. 1995); *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 (1st Cir. 1990).

## Due Process

You may find that the defendant deprived the plaintiff of [life, liberty, or property] without due process of law if the defendant acted intentionally or if his conduct reflected a reckless or callous indifference to the plaintiff's rights. A person acts intentionally when he acts either with the desire to cause harm or

with the belief that harm is certain to result. A person acts with reckless or callous indifference when it would be apparent to any reasonable person in similar circumstances that his conduct would be very likely to result in harm.[1]

If a person acts with no desire to cause harm or no belief that harm is certain to result but acts unreasonably in light of the risks, [his/her] behavior is negligent. If the plaintiff has proved only that the defendant acted negligently, you must find for the defendant because negligence is not sufficient to constitute a deprivation of due process.[2]

[1] *Germany v. Vance*, 868 F.2d 9, 18 & n.10 (1st Cir. 1989).

[2] *Daniels v. Williams*, 474 U.S. 327, 332–34 (1986); *Watterson v. Page*, 987 F.2d 1, 8–9 (1st Cir. 1993); *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir. 1989); *Williams v. City of Boston*, 771 F. Supp. 2d 190 (D. Mass. 2011).

## Supervisory Liability

In order to hold the defendant's supervisor liable, the plaintiff must prove that [his/her] conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of the plaintiff and that there was an affirmative link between the conduct of the other defendants and the defendant's conduct or inaction.[1]

[1] *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009); *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91–92 & n.4 (1st Cir. 1994); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989); *see also Camilo-Robles v. Zapata*, 175 F.3d 41, 43–44 (1st Cir. 1999).

## Immunity

If a reasonable police officer could have believed that the plaintiff's arrest was lawful based upon clearly established law and information known to the defendant at the time of the arrest, even if the defendant's conclusion that there was probable cause for arrest was mistaken, the defendant is entitled to immunity.[1]

[1] *St. Hilaire v. City of Laconia*, 71 F.3d 20, 25 n.1 (1st Cir. 1995); *see also Pearson v. Callahan*, 129 S. Ct. 808 (2009); *Wilson v. Layne*, 526 U.S. 603, 610–11 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Fletcher v. Town of Clinton*, 196 F.3d 41, 48–49 (1st Cir. 1999); *Iacobucci v. Boulter*, 193 F.3d 14, 21–23 (1st Cir. 1999); *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999); *Martineau v. Kurland*, 36 F. Supp. 2d 39, 43 (D. Mass. 1999).

## INSTRUCTIONS ON MASSACHUSETTS CIVIL RIGHTS ACT

## Statement of the Cause of Action

The plaintiff in this case alleges that the defendant violated the Massachusetts Civil Rights Act (G.L. c. 12, §§ 11H and 11I), which provides, in pertinent part:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, [by any person by means of threats, intimidation or coercion], may [bring an action for money damages].[1]

In order to prevail on a claim under the Massachusetts Civil Rights Act, the plaintiff must prove by a preponderance of evidence the following three elements:

1.   his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth,

2.   has been interfered with, or attempted to be interfered with, by the defendant, and

3.   the interference or attempted interference was by threats, intimidation, or coercion.[2]

[1] G.L. c. 12, § 11I.

[2] Mancuso v. Massachusetts Interscholastic Athletic Ass'n, Inc., 453 Mass. 116, 131 (2009); Kennie v. Natural Res. Dep't, 451 Mass. 754 (2008); Haufler v. Zotos, 446 Mass. 489, 504 (2006); Swanset Dev. Corp. v. City of Taunton, 423 Mass. 390, 395 (1996); Vranos v. Skinner, 77 Mass. App. Ct. 280, 290 (2010); Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 749 (2002); Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 91 (1999); Reproductive Rights Network v. President of the Univ. of Mass., 45 Mass. App. Ct. 495, 505 (1998); Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 564 (1995); Bally v. Northeastern Univ., 403 Mass. 713, 717 (1989); see also LaManque v. Massachusetts Dept. of Employment & Training, 3 F. Supp. 2d 83, 93 (D. Mass. 1998); French v. United Parcel Serv., Inc., 2 F. Supp. 2d 128, 133 (D. Mass. 1998); Brum v. Town of Dartmouth, 428 Mass. 684, 707–08 (1999); Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 91 (1999); Reproductive Rights Network v. President of the Univ. of Mass., 45 Mass. App. Ct. 495, 505 (1998).

## Secured Right

To establish the first element of his claim, the plaintiff must prove by a preponderance of the evidence that he was engaged in the exercise or enjoyment of rights secured by the Constitution or by the laws of the United States or of the Commonwealth.

The term "secured" means "created by, arising under or dependent upon," rather than "fully protected." A right is secured by the Constitution or laws if it emanates from the Constitution or from the laws; if it finds its source in the Constitution or the laws of the United States or of the Commonwealth.[1]

In this case, the plaintiff alleges that he was engaged in or enjoying her right [to/of] *to be determined by evidence..* That right is secured by the Constitution or the laws of the United States or of the Commonwealth.

[1] *Bell v. Mazza*, 394 Mass. 176, 182 (1985) (citing *Logan v. United States*, 144 U.S. 263, 293 (1892) and *United States v. Guest*, 383 U.S. 745, 778–79 (1966) (Brennan, J., concurring)).

**Interference or Attempted Interference**

To establish the second element of her claim, the plaintiff must prove by a preponderance of the evidence that the defendant interfered with or attempted to interfere with the plaintiff's right [to/of] *to be determined by the evidence..*

To "interfere" means to hinder, impede, intrude, or meddle in the affairs of another.[1]

The Massachusetts Civil Rights Act contains no requirement that a person specifically intend to deprive another of a secured right in order to be liable under that Act. Thus, the plaintiff is not required to prove that the defendant specifically intended to interfere or attempted to interfere with his engagement in or enjoyment of a secured right.[2]

[1] *American Heritage Dictionary of the English Language* at 683 (1969).
[2] *Deas v. Dempsey*, 403 Mass. 468, 470–71 (1988); *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 99 (1987); *Elwood v. Pina*, 815 F.2d 173, 177 (1st Cir. 1987).

**Threats, Intimidation, or Coercion**

The third element of the plaintiff's claim is that the defendant interfered with or attempted to interfere with the plaintiff's enjoyment of secured rights by threats, intimidation, or coercion.[1]

The Massachusetts Civil Rights Act protects rights secured by the Constitution or laws of the United States, or rights secured by the constitution or laws of this Commonwealth, only against interference or attempted interference "by threats, intimidation or coercion." Those words must be applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass, or humiliate.[2]

When considering whether the defendant threatened, intimidated, or coerced the plaintiff, you are to consider the issue under an objective standard, that is, whether a reasonable person in the plaintiff's circumstances would be threatened, intimidated, or coerced by the defendant's conduct. In determining how a reasonable person would react in the same circumstances, you may consider how other persons actually responded to events in this case.[3]

The term "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.[4]

The term "intimidation" means the putting in fear for the purpose of compelling or deterring conduct.[5]

The term "coercion" means the application to another of such force, either physical, economic or moral, as to constrain him to do against his will something he would not otherwise have done. Stated differently, "coercion" is the active domination of another's will, or the use of physical, economic or moral force to compel another to act or assent, or to refrain from acting or assenting.[6]

If the defendant's words could reasonably be understood only to express an intention to use lawful means to hinder the plaintiff, those words would not be a threat, intimidation, or coercion actionable

under the Massachusetts Civil Rights Act. In other words, a threat to use lawful means to reach an intended result is not actionable under Section 11I.[7]

The defendant's fear of business disruption, fear for economic loss, or fear for physical safety are not justifications for acting in violation of the Massachusetts Civil Rights Act.[8]

[1] *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 564 (1995). *See also LaManque v. Massachusetts Dept. of Employment & Training*, 3 F. Supp. 2d 83, 93 (D. Mass. 1998); *French v. United Parcel Serv., Inc.*, 2 F. Supp. 2d 128, 133 (D. Mass. 1998); *Brum v. Town of Dartmouth*, 428 Mass. 684, 707–08 (1999); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 91 (1999); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 505–10 (1998).

[2] *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771, 781 (1987); *Smith v. Longmeadow*, 29 Mass. App. Ct. 599, 603 (1990).

[3] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474–75, 477 (1994). *See also Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 46 (D. Mass. 1998).

[4] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994) (quoting *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 104 (1987) (O'Connor, J., dissenting)); *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989) ("acts or language by which another is placed in fear of injury or damage"). *See also Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 46 (D. Mass. 1998); *LaManque v. Massachusetts Dept. of Employment & Training*, 3 F. Supp. 2d 83, 93 (D. Mass. 1998); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 91–92 (1999); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 505 (1998). But note that, by itself, a threat to use lawful means to reach an intended result is not actionable under Section 11I. *Sena v. Commonwealth*, 417 Mass. 250, 263 (1994) (citing *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771, 782 (1987)).

[5] *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994); *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 104 (1987) (O'Connor, J. dissenting); *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989) ("creation of fear to compel conduct"). *See also Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 46 (D. Mass. 1998); *LaManque v. Massachusetts Dept. of Employment & Training*, 3 F. Supp. 2d 83, 93 (D. Mass. 1998); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 92 (1999); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 505 (1998).

[6] *Kennie v. Natural Res. Dep't of Dennis*, 451 Mass. 754, 763 (2008) ("threats" and "intimidation" both often rely on an element of actual or threatened physical force, but "coercion" is a broader category that may rely on physical, moral, or economic coercion); *Buster v. George W. Moore, Inc.*, 438 Mass. 635 (2003) (coercion includes economic pressure, unaccompanied by any threat of force); *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548, 565 (1995); *Deas v. Dempsey*, 403 Mass. 468, 471 (1988) (quoting *Webster's New International Dictionary* at 519 (2d ed. 1959)); *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989). *See also Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 46 (D. Mass. 1998); *LaManque v. Massachusetts Dept. of Employment & Training*, 3 F. Supp. 2d 83, 93 (D. Mass. 1998); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 92 (1999); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 505 (1998).

[7] *Sena v. Commonwealth*, 417 Mass. 250, 263 (1994) (citing *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771, 782 (1987)); *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771, 782 (1987) (citing *Bell v. Mazza*, 394 Mass 176, 183 (1985)). *See also*

*Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 93–94 (1999); *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 506–08 (1998).

[8] *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 101 (1987).

## Unreasonable Use of Force

All persons have a secured right to be free from the use of unreasonable force by law enforcement officials.[1]

Whether a defendant used unreasonable force in the course of the arrest, investigatory stop, or other seizure is determined in light of all attendant circumstances under an objective standard of reasonableness: that is, whether a reasonable and prudent police officer in the same situation would have used the degree of force used by the defendant.[2]

[1] *Human Rights Comm'n of Worcester v. Assad, 370 Mass. 482, 487 (1976).*

[2] *Graham v. Connor*, 490 U.S. 386 (1989); 3 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions* § 103.08 (4th ed. 1987).

## Damages

A plaintiff under G.L. c. 12, § 11I is entitled to compensatory monetary damages[1] but not punitive damages.[2]

[1] G.L. c. 12, § 11I.

[2] *See Gardner v. Governor Apartments Assoc.*, 396 Mass. 661, 663 n.2 (1986).

## INSTRUCTIONS ON INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Elements of Intentional Inflictions of Emotional Distress—State of Mind

To allege a case of intentional infliction of emotional distress, it is necessary for the plaintiff to prove (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of the conduct, (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it.[1]

---

[1] Okoli v. Okoli, 81 Mass. App. Ct. 381, 387 n.8, 963 N.E.2d 737, 744 n.8 (2012). The same elements are stated with slightly different wording in Roman v. Trustees of Tufts College, 461 Mass. 707, 717–718, 964 N.E.2d 331, 341, 278 Ed. Law Rep. 1095 (2012).

An action in tort lies when a person's intentional or reckless conduct is considered so extreme and outrageous by a civilized community that it causes another person severe emotional distress beyond that which a reasonable person would be expected to endure.[2]

In an action for intentional or reckless infliction of emotional distress, the plaintiff must show either that the defendant acted intentionally — he desired to inflict the emotional distress or knew that such distress was substantially certain to result from his conduct — or that he acted recklessly — he acted in deliberate disregard of the high probability that the emotional distress would result from his conduct.[3] There is but one cause of action in tort, whether the defendant intentionally or recklessly.[4]

---

[2] Restatement, 2d, Torts, § 46(1). See Agis v. Howard Johnson Co., 371 Mass. 140, 144–145, 355 N.E.2d 315, 318 (1976); Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 236, 897 N.E.2d 82, 94 (2008), review denied, 453 Mass. 1103, 901 N.E.2d 138 (2009). - Restating the elements of the tort of intentional or reckless infliction of emotional distress, see Howell v. Enterprise Publishing Co., LLC, 455 Mass. 641, 672, 920 N.E.2d 1, 28, 38 Media L. Rep. (BNA) 1141 (2010), superseding 72 Mass.App.Ct. 739, 893 N.E.2d 1270 (2008); Chao v. Ballista, 772 F. Supp. 2d 337, 361–362 (D. Mass. 2011) (applying Mass law); In re DiMare, 462 B.R. 283, 309 n.134 (Bankr. D. Mass. 2011) (applying Mass law).

- Howe v. Palmer, 80 Mass. App. Ct. 736, 745–746, 956 N.E.2d 249, 257–258 (2011) (evidence supported jury's verdict that defendants intentionally inflicted emotional distress on farm owner, who suffered from severe dyslexia and slow mental processing and was easily intimidated, by relentless campaign over six-year period to overpower his will by gradually exploiting his weaknesses, isolating him from family and church, convincing him that he exhibited characteristics of "Satan," and finally convincing him to convey farm to them as payment for their services in cleaning up farmhouse and surrounding property; deed rescinded and damages of $60,000 plus interest and costs awarded).

[3] Restatement, 2d, Torts, § 46, Comment i; Nancy P. v. D'Amato, 401 Mass. 516, 520, 517 N.E.2d 824, 827 (1988). - See Agis v. Howard Johnson Co., 371 Mass. 140, 144–145, 355 N.E.2d 315, 318 (1976) (plaintiff must show that "the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct").- Compare Parker v. Chief Justice For Admin. and Management of Trial Court, 67 Mass. App. Ct. 174, 181, 852 N.E.2d 1097, 1103 (2006) (probation officers who intended only to bring about arrest of person they believed to be probation violator did not know, and should not have known, that tortuously inflicted emotional distress was likely result of their mistake in identifying plaintiff as subject of arrest warrant); Dusoe v. Mobil Oil Corp., 167 F. Supp. 2d 155 (D. Mass. 2001) (applying Massachusetts law) (where homeowners failed to present any evidence that their property was contaminated by oil company's release in 1968 of 27,000 gallons of oil from hole in pipeline, and there was no evidence that company knowingly contaminated water supply for several decades and then engaged in extensive cover-up, their claim for intentional infliction of emotional distress failed). - In re Bailey, 437 B.R. 721, 730 (Bankr. D. Mass. 2010) (applying Mass. law) (negligence alone will not support claim for intentional infliction of emotional distress).

[4] Bowman v. Heller, 420 Mass. 517, 519, 651 N.E.2d 369 (1995). - See Simon v. Solomon, 385 Mass. 91, 95, 431 N.E.2d 556, 561 (1982) ("Our decisions … have firmly established that a plaintiff may recover for emotional distress inflicted recklessly or intentionally.").

If the defendant's intent was to commit another tort resulting in the plaintiff's suffering emotional distress, such as a battery or a trespass to property, it cannot be said that the defendant intended to invade the plaintiff's interest in freedom from severe emotional distress, and therefore the defendant is not liable for intentional infliction of emotional distress.[5]

## SPECIAL INSTRUCTIONS REQUEST FOR CHARGE OF JURY

### Burden of Proof

In a civil action such as this, the plaintiff bears the burden of proving every essential element of his claim by a fair preponderance of the credible evidence.

Whether the plaintiff has established the essential elements of [his/her] case by a fair preponderance of the credible evidence is determined by the quality of the evidence: its credibility, believability, trustworthiness, and accuracy. To prove something by a preponderance of the evidence, the plaintiff must prove that thing to be more likely or more probably true than not true.

It is not enough that mathematically the chances somewhat favor a proposition to be proved. The weight of the preponderance of the evidence is its power to convince [a jury] of the actual truth of the proposition to be proved.[1]

[1] *Sargent v. Massachusetts Accident Co.*, 307 Mass. 246, 250 (1940). See also Lisbon v. Contributory Ret. App. Bd., 41 Mass. App. Ct. 246 (1996).

### Depositions

A deposition is testimony that was given out of court by a witness under oath, in response to questions asked by either of the attorneys. You are to treat a deposition in the same way as if the testimony had been given here in court.[1] As with all witnesses, it is for you to determine how believable and how significant that testimony is.[2]

[1] If the deposition is being used to impeach an available nonparty witness, the prior testimony is admissible only as to the witness's credibility

[2] Mass. R. Civ. P. 30, 30A, 32.

### Credibility of Witnesses

It will be your duty to decide any disputed questions of fact. You will have to determine which witnesses to believe, and how much weight to give their testimony. You should give the testimony of each witness whatever degree of belief and importance that you judge it is fairly entitled to receive. You are the sole judges of the credibility of the witnesses, and if there are any conflicts in the testimony, it is your function to resolve those conflicts and to determine where the truth lies.[1]

---

[5] Restatement, 2d, Torts, § 47 and Comment a.

You may believe everything a witness says, or only part of it or none of it. If you do not believe a witness's testimony that something happened, of course your disbelief is not evidence that it did *not* happen. When you disbelieve a witness, it just means that you have to look elsewhere for credible evidence about that issue.[2]

In deciding whether to believe a witness and how much importance to give a witness's testimony, you must look at all the evidence, drawing on your own common sense and experience of life. Often it may not be *what* a witness says, but *how* he says it that might give you a clue whether or not to accept his version of an event as believable. You may consider a witness's character, his appearance and demeanor on the witness stand, his frankness or lack of frankness in testifying, whether his testimony is reasonable or unreasonable, probable or improbable. You may take into account how good an opportunity he had to observe the facts about which he testifies, the degree of intelligence he shows, whether his memory seems accurate.[3]

You may also consider his motive for testifying, whether he displays any bias in testifying, and whether or not he has any interest in the outcome of the case.[4]

[1] The credibility of witnesses is always a jury question, *Lupia v. Marino*, 353 Mass. 749, 749 (1967) (rescript opinion); *Commonwealth v. Sabean*, 275 Mass. 546, 550 (1931); *Commonwealth v. Bishop*, 9 Mass. App. Ct. 468, 471 (1980), and no witness is incredible as a matter of law, *Commonwealth v. Hill*, 387 Mass. 619, 623–24 (1982); *Commonwealth v. Haywood*, 377 Mass. 755, 765 (1979).

[2] Inconsistencies in a witness's testimony are a matter for the jury, *Commonwealth v. Clary*, 388 Mass. 583, 589 (1983); *Commonwealth v. Dabrieo*, 370 Mass. 728, 734 (1976), *Rintone v. Mass. Bay Transp. Auth.*, 3 Mass. App. Ct. 759, 759 (1975) (rescript) (citing *Garland v. Stetson*, 292 Mass. 95, 97–98 (1935)), which is free to accept testimony in whole or in part, *Commonwealth v. Fitzgerald*, 376 Mass. 402, 411 (1978). Disbelief of a witness is not affirmative evidence of the opposite proposition. *Commonwealth v. Swartz*, 343 Mass. 709, 713 (1962).

[3] The credibility of witnesses turns on their ability and willingness to tell the truth. *Commonwealth v. Widrick*, 392 Mass. 884, 888 (1984). The third paragraph of the model instruction lists those factors that have been recognized as relevant to this determination. *See Commonwealth v. Coleman*, 390 Mass. 797, 802 (1984). These were affirmed as correct and adequate in *Commonwealth v. A Juvenile*, 21 Mass. App. Ct. 121, 124 & n.5 (1985). However, the judge is not required to mention the witnesses' capacity to recall and relate, since that approaches the matter of competence, which is for the judge. *Commonwealth v. Whitehead*, 379 Mass. 640, 657 n.20 (1980).

[4] In charging on credibility, the judge should avoid any suggestion that only *credible* testimony constitutes evidence. *See Commonwealth v. Gaeten*, 15 Mass. App. Ct. 524, 531 (1983).

THE DEFENDANTS,
CHARLES ZUKOWSKI &
LONGWOOD SECURITY SERVICES, INC.,
BY THEIR ATTORNEYS,

Date:    11/4/2013            /s/ Patrick Driscoll
                             Scott M. Carroll, BBO# 640852
                             Patrick Driscoll, BBO# 669560
                             Boyle, Shaughnessy & Campo, P.C.
                             695 Atlantic Avenue
                             Boston, MA 02111
                             (617) 451-2000
                             FAX: (617) 451-5775

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 4th day of November, 2013.

/s/ Patrick Driscoll